**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**MCALLEN DIVISION**

| | | |
|---|---|---|
| **YESSENIA RAMIREZ,** | § | |
| | § | |
| **Plaintiff,** | § | |
| **v.** | § | **CIVIL ACTION NO. _____** |
| | § | |
| | § | |
| **PHARR-SAN JUAN-ALAMO** | § | **JURY TRIAL REQUESTED** |
| **INDEPENDENT SCHOOL** | § | |
| **DISTRICT, a Texas Independent** | § | |
| **School District and JUAN C. GARZA,** | § | |
| **Individually and as Former Employee** | § | |
| **of Pharr-San Juan-Alamo** | § | |
| **Independent School District,** | § | |
| | § | |
| **Defendants.** | § | |

---

**PLAINTIFF'S ORIGINAL COMPLAINT**

---

COMES NOW Plaintiff, Yessenia Ramirez (hereinafter "Plaintiff"), by and through her attorney of record, Stephen Gregory Rushing, of the Rushing Law Firm, PLLC, and files this, her Original Complaint, against Defendants PHARR-SAN JUAN-ALAMO INDEPENDENT SCHOOL DISTRICT (hereinafter "the District," "PSJA ISD," or "the School District") and JUAN C. GARZA (hereinafter "Garza" or "Principal Garza"), collectively referred to as the "School District Defendants." Plaintiff reserves the right to replead if new claims and issues arise upon further development of the facts, as permitted by law. In support thereof, Plaintiff would respectfully show this Court the following:

## I.  JURISDICTION

1.      Jurisdiction is conferred upon this Court pursuant to 28 U.S.C. §§ 1331 and 1343 because the matters in controversy arise under the Constitution and laws of the United States of America.

2.      Jurisdiction is conferred upon this Court pursuant to Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681–1688, and the federal regulations issued thereunder.

3.      Jurisdiction is conferred upon this Court pursuant to § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, and the federal regulations issued thereunder.

4.      Jurisdiction is conferred upon this Court pursuant to Title II of the Americans with Disabilities Act of 1990.  42 U.S.C. §§ 12131 et seq.; 28 C.F.R. pt. 35.

5.      Supplemental jurisdiction is conferred upon this Court over various state and common-law claims pursuant to 28 U.S.C. § 1367.

## II.  VENUE

6.      All or a substantial part of the events or omissions giving rise to these claims occurred in this district. Therefore, venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2).

### III.  THE PARTIES

7.      Plaintiff Yessenia Ramirez is a female individual and citizen of the State of Texas. As of the time of filing of this Complaint, Ramirez is older than 18 years of age.

8.      Defendant Pharr-San Juan-Alamo Independent School District was formed under the constitution, statutes, and laws of the State of Texas. Specifically, PSJA ISD was established under the Texas Education Code. PSJA ISD receives federal funds. PSJA ISD can be served by and through its Superintendent, Dr. Jorge L. Arredondo, at PSJA ISD Administration Building, 601 East Kelly, Pharr, Texas 78577.

9.      Defendant Juan C. Garza is a resident of the State of Texas. Garza was a former Principal at PSJA Memorial Early College High School, a school within PSJA ISD. Garza is, as of the current date, District Principal of San Isidro Independent School District. Garza may be served at 5175 Fm 1017 San Isidro, Texas 78588-0010. He is being sued in his individual and official capacities.

### IV.  HISTORICAL BACKGROUND OF TITLE IX

10.      The Education Amendments of 1972 were passed in Congress as Public Law No. 92-318, 86 Stat. 235 (June 23, 1972) and codified at 20 U.S.C. §§ 1681–1688. More commonly, the Educational Acts of 1972 are referred to as "Title IX," which states in part that "[n]o person in the United States shall, on the basis of gender, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving federal financial assistance." 20 U.S.C. § 1681(a).

11.     Title IX is intended to provide protection and a remedy for the ill effects of discrimination based upon sex, gender, or gender stereotypes. Furthermore, Title IX serves to provide assurance that students are not victims of bullying, harassment, sexual harassment, assault, or sexual assault because of their membership in this protected class.

12.     The Department of Education promulgated rules to help implement Congress's intent at 34 C.F.R. §§ 106.1 et seq. The U.S. Department of Education's Office of Civil Rights ("OCR") issued policy guidance on discriminatory harassment. It did so regarding, inter alia, harassment based upon sex (Title IX). *See* 62 Fed. Reg. 12034 (Mar. 13, 1997). These rules make clear that school personnel must understand their legal obligations to address harassment based upon sex, gender, and gender stereotypes. School personnel are in the best position to recognize and prevent harassment and to lessen the harm to students if, despite their best efforts, harassment continues to occur, and to remedy the effects of harassment.

13.     In *Gebser v. Lago Vista Independent School District*, 524 U.S. 274 (1998), the U.S. Supreme Court took on the issue of the applicability and scope of civil liability against a school district in teacher-student sexual harassment. The student filed suit for sexual harassment under Title IX, § 1983, and state law. The Court held that a student is not allowed to recover for sexual harassment by one of the district's teachers unless an official of the district had actual notice of the misconduct and was deliberately indifferent to the misconduct. The student's claims primarily focused on Lago Vista's failure to promulgate an effective policy and grievance procedure for sexual harassment claims. The student cited to the Department of Education's regulations requiring each funding recipient to "adopt and

4

publish grievance procedures providing for prompt and equitable resolution" of discrimination complaints. 34 C.F.R. § 106.8(b). Additionally, a regulation provided "that students be notified that [the school district] does not discriminate on the basis of sex in the educational programs or activities which it operates." *Id.* §106.9(a). The district argued that Lago Vista's alleged failure to comply with the regulations did not establish the requisite actual notice and deliberate indifference required for recovery for sexual harassment. The Court agreed and said that "the failure to promulgate a grievance procedure does not itself constitute discrimination under Title IX" and that there cannot be a private right of action under Title IX and a subsequent recovery in damages for a failure to promulgate grievance procedures. 524 U.S. at 176.

14.    In *Davis v. Monroe County Board of Education*, 526 U.S. 629 (1999), the Supreme Court addressed the issue of student-on-student sexual harassment. The student claimed monetary and injunctive relief under Title IX. The Court reversed the judgment of the appellate court, which had held that "'student-on-student,' or peer, harassment provides no ground for a Title IX private cause of action." *Id.* at 629. The Court held that a suit for student-on-student harassment could lie against a recipient of Title IX funding only where the recipient acted with deliberate indifference to known acts of harassment in its programs or activities. Moreover, the Court held that such an action would only lie if the harassment was "so severe, pervasive and objectively offensive that it effectively barred the victim's access to an educational opportunity or benefit." *Id.*

15.     The Supreme Court in *Davis* also noted that school boards across the country were on notice that they could be held liable for their own failure to address harassment and follow the guidelines developed by the Department of Education's OCR. *Id.* at 648 (citing 62 Fed. Reg. 12034, 12039-12040 (1997); 59 Fed. Reg. 11448-11449 (1994)). Such liability would result if their failure to address the harassment was due to their own deliberate indifference in following such guidelines when a district official was on notice of potential sexual harassment of a student by another student or even by a teacher.

16.     The Court in *Davis* also noted that the National School Board Association has issued a publication for use by school attorneys and administrators in understanding the law regarding the sexual harassment of employees and students. The publication observed that districts could be liable under Title IX for their failure to respond to sexual harassment of a student by another student or teacher.

17.     The Court set out the elements required for recovery on a claim for sexual harassment by a teacher or student. Those elements are (1) the student must be a member of a protected class and be bullied, harassed, or assaulted because of his/her membership in that class based upon sex or gender; (2) the harassment be severe and pervasive such that the student experiences a deprivation of educational opportunity; (3) the school district was on notice of the harassment; and (4) the district was deliberately indifferent to it.

18.     Importantly, the Court in *Davis* affirmed that public school districts have a threshold duty to investigate the allegations in a timely manner and a parallel duty to assure that the student does not become more and more vulnerable to the harassment. Further,

school districts have a duty not only to prevent ongoing and future occurrences of the harassment but also to remedy the effects of past harassment.

19.     During the time period leading up to and through the *Gebser* and *Davis* decisions, the OCR promulgated directives for school districts to follow regarding harassment, bullying, sexual harassment, and sexual assault. Many of such directives were predicated on regulations promulgated by the Department of Education, including those related to the procedural rights and protections a student and their parents had under Title IX.

20.     Furthermore, the OCR produced *Protecting Students from Harassment and Hate Crime*. It provided, essentially, a checklist that school districts had to follow, with the intent that it would aid the district to develop a culture that made schools safer for all students and to help prevent harassment and sexual assault and to remedy the effects thereof. It noted that sexual harassment, if ignored, could jeopardize a student's well-being and often provoke retaliation. It listed a number of examples of effective remedial actions including, but not limited to, timely investigations, appropriate use of punishment, increasing adult supervision of "hot spots," close monitoring of the victim or perpetrator, use of informal conflict resolution, providing emotional and psychological support for the victim and the perpetrator, and greater teaching among the school community, especially staff. It highlighted the need for a compliance coordinator to assure that the school district followed various directives developed by the OCR and that any preventative or remedial measure be assessed on an ongoing basis for effectiveness.

21.     In January of 2001, the OCR issued a *Revised Sexual Harassment Guidance*, which gave notice to school districts that discrimination based upon gender, including harassment, is actionable. The OCR reiterated the standards of care that the U.S. Supreme Court enunciated in *Gebser* and *Davis*. The OCR issued various executive directives on matters regarding bullying, harassment, and discrimination based on gender. Such directives were issued in response to *Davis* and reinforced that students and parents must be informed about their procedural and legal rights in such instances of discrimination, harassment, and bullying, including, but not limited to, a school district's grievance procedures. It provided school boards with further direction regarding their specific obligations and stated that upon completion of an investigation, the school district should review the effect of sexual harassment on the child's education; the type, frequency, and duration of the conduct; the number of individuals involved; the location of the incidents; and the totality of the circumstances. Further, school districts were required to provide prompt and effective action, inform the victim's family of the harassment in a timely manner, and provide information about the family's procedural rights. Importantly, it highlighted the need for any investigation to be impartial. Lastly, school districts were provided with interventional directives, such as providing for or paying for counseling, providing tutoring, and giving the student an opportunity to make up work that was missed due to the discrimination, harassment, or bullying.

22.     In January 2006, the OCR issued a *Memorandum* or *Dear Colleague Letter* regarding harassment based upon sex or gender. The letter enclosed the January 2001 *Revised Sexual Harassment Guidance* booklet. Almost every year since then, the OCR has reiterated

8

a school district's duties when it receives notice of a student's allegations of being a victim of discrimination, bullying, harassment, or assault based upon gender or sex. These duties have been incorporated into the jurisprudence of Title IX and Texas law.

## V.  TEXAS LAW

23.     Educators have a duty to report the abuse and neglect of a minor. *See* Tex. Fam. Code Ann. § 261.101; *see also* Tex. Educ. Code Ann. § 21.006; 19 Tex. Admin. Code § 61.1051. Abuse includes, but is not limited to, any type of sexual conduct that causes or could cause emotional injury to a minor.  Tex. Fam. Code Ann. § 261.001(1)(A), (B), (E), (F).

24.     The Texas Education Agency ("TEA") developed and distributed support material for school boards as to the best way to prevent bullying and harassment in general, and bullying and harassment based upon sex and gender in particular. Such material included ethical standards for teachers as developed by the State Board of Educator Certification.

25.     In 2003, the duty that all educators had to report abuse was reinforced for school superintendents who had specific duties in addition to those noted in the Family Code to report such allegations to the school board of trustees, to the TEA, and to the SBEC. Tex. Educ. Code Ann. § 21.006(c)-(d). In fact, a school superintendent who fails to take reporting measures could be liable civilly or criminally or have an ethical complaint filed with the TEA. Such superintendent could lose his or her license. Further, school boards were provided

with significant information from the Texas Association of School Boards ("TASB") on how to best respond to assaults, bullying, and harassment when it occurred. The TASB disseminated a memorandum entitled *Harassment and Bullying Policies in Public Schools,* wherein it was required that schools have an active policy and practice regarding both teacher- on-student and student-to-student sexual harassment. It further noted that a school district could be liable where there is teacher-on-student sexual harassment and the district's "deliberate indifference caused the student(s) to undergo harassment or make them vulnerable to it, and the harassment takes place in a context subject to the school district's control." Citing *Gebser*; *Davis*;, *see also* 34 C.F.R. §§ 106.8–106.9 (how to address allegations of sexual harassment).

26.     The *Harassment and Bullying Policies in Public Schools* memorandum referred school districts in Texas to look to OCR document *Protecting Students from Harassment and Hate Crimes: A Guide For Schools* with regard to addressing issues of assault, bullying, and harassment.

27.     In 2011, the Texas Legislature required that school district staff have specialized training on the topic of bullying, discrimination, harassment, and sexual assault, Tex. Educ. Code Ann. § 21.451, and that students be provided various types of assistance, including counseling.

28.     In 2012, the TASB again provided school districts in Texas with guidance on addressing allegations of sexual harassment. It promulgated updated versions of policies and procedures that a school board like PSJA ISD could adopt to address sexual harassment by staff. The bulletin sent out to all Texas school districts reiterated their

duties to have a functional policy and procedure for reporting, investigating, and issuing a determination regarding an allegation of sexual harassment. It also reiterated the duty to train staff and students on issues regarding sexual harassment. Further, it highlighted the duty for staff to report allegations of sexual misconduct between a teacher and student to child protective services. Tex. Fam. Code Ann. § 261.1010(b).

## VI.  POLICIES AND PROCEDURES DEVELOPED BY PHARR-SAN JUAN-ALAMO ISD

29.     Pharr-San Juan-Alamo ISD has implemented policies and procedures to respond to student-on-student or teacher-on-student sexual harassment, bullying, discrimination, or sexual assault.

30.     Such policies and procedures include the implementation of dating violence policies that address safety planning, the enforcement of protective orders, teacher and administrator training, student counseling, and awareness education for students and parents. PSJA ISD cites to the Texas Family Code and the Texas Education Code in laying out this policy.

31.     PSJA ISD includes provisions for sexual harassment. "A district may develop and implement a sexual harassment policy to be included in the district improvement plan." Tex. Educ. Code Ann. § 37.083. Further, PSJA ISD recognizes that "sexual abuse of a student by an employee, when there is a connection between the physical sexual activity and the employee's duties and obligations as a district employee, violates a student's constitutional right to bodily integrity." U.S. Const. amend. XIV; *Doe v. Taylor Indep. Sch.*

*Dist.*, 15 F.3d 443 (5th Cir. 1994). A district's "treatment of a complainant . . . in response to a formal complaint of sexual harassment may constitute discrimination on the basis of sex under title IX." 34 C.F.R. § 106.45(a); 20 U.S.C. §1681.

32.     PSJA ISD has also designated a Title IX Coordinator and has a provision that PSJA ISD must notify "students and parents . . . of the name or title, office address, electronic mail address, and telephone number of the employee or employees designated as the Title IX Coordinator." 34 C.F.R. § 106.8(a). PSJA ISD has made publication of the foregoing available on the District's website.

33.     Additionally, the District has provided, in its section entitled "Response to Sexual Harassment," definitions of "actual knowledge," "sexual harassment," and "deliberate indifference."

34.     The District's procedures highlight the responsibility of the Title IX Coordinator to promptly contact the complainant and discuss supportive measures in accordance with 34 C.F.R. § 106.45.

35.     Moreover, PSJA ISD provides for emergency removal procedures or administrative leave of the respondent. The District enumerates its process for a Title IX Formal Complaint, including equitable treatment of the parties involved, objective evaluations of evidence, a presumption that a respondent is not responsible for the alleged conduct until a determination of responsibility  has been satisfied, and reasonably  prompt time  frames for the conclusion of each step of the process for a Title IX Formal Complaint.

36.     Regarding the District's Title IX Formal Complaint process, PSJA ISD provides for notice of allegations, dismissal of a formal complaint, consolidation of a Formal Complaint, investigation of a Formal Complaint, hearings, determinations regarding responsibility, implementation of remedies, appeals, informal resolutions, and recordkeeping.

37.     The Pharr-San Juan-Alamo Independent School District's policies and procedures as listed in its *Student Welfare, Freedom from Discrimination, Harassment and Retaliation* were designed and developed to address bullying, harassment, assault, and sexual assault based upon sex or gender in light of the requisite state and federal laws, federal rules and regulations, case law, OCR guidelines, and professional standards of care.

38.     Despite adopting such policies and procedures, PSJA ISD failed to practice its policies and procedures when in this case, it failed to adhere to constitutional, federal, and state- created duties, as well the Ethical Standards for Educators and its own District policies and procedures.

## VII. FACTUAL ALLEGATIONS

39.     Plaintiff Ramirez is a young woman whose date of birth is November 22, 2001.

40.     Plaintiff attended Pharr-San Juan-Alamo Memorial Early College High School in the Pharr-San Juan-Alamo Independent School District at all times pertinent to this case.

41.     Plaintiff was born with chromosomal 9 and 10 abnormalities, which resulted in developmental delays early in life.

42.     As recently as November 6, 2018, Plaintiff was diagnosed with Language Disorder, Oppositional Defiant Disorder, Intermittent Explosive Disorder, and Borderline Intellectual Functioning. Plaintiff's IQ is 72, placing her average, overall ability as only 3% as good as or better than her same age peers.

43.     Plaintiff was eligible for special education services at PSJA ISD under the Individuals with Disabilities Education Act's ("IDEA") category of Other Health Impairment as of April 4, 2017. Prior to April 4, 2017, Plaintiff was eligible for special education services under the IDEA's category of Specific Learning Disability and Speech Impairment.

44.     At all times applicable hereto, PSJA ISD was the recipient of many millions of dollars in federal funds (in the 2020-2021 school year alone, it received over $131 million in federal funds). Cantu, who committed the sexual misconduct, was an employee and agent of PSJA Memorial Early College High School, and the School District. Cantu was a special education teacher's aide and because of her disabilities, Plaintiff was in the same program. At all times applicable hereto, Garza was the Principal in charge of PSJA Memorial Early College High School. In this capacity, Principal Garza was clearly an "appropriate person" in this case. His position as Principal clearly gave him the authority to repudiate Cantu's conduct and eliminate the hostile environment that Plaintiff was in.

45.     In September of 2017, when she was 16 years old, Plaintiff met Cantu in her special education program.

46.     In late January or early February of 2018 ("before Valentine's Day"), Garza stepped into a classroom where Cantu and Plaintiff were alone and in a sexually

compromising position. The lights in the classroom were on. Garza clearly saw them and clearly recognized that something sexually inappropriate was going on because he exclaimed "What the Hell?!" before looking over his shoulder and backing out of the classroom and shutting the door behind him. Garza did not say or do anything else during, or after, this encounter, which occurred before Valentine's Day, 2018. He just left Plaintiff alone with a predator.

47.     Further, after Principal Garza "caught" Plaintiff and Cantu together, he apparently did nothing else to stop this child molester until at least late April, when another adult, a security guard, brought forward his/her own concerns. These facts, when combined with the observations of Plaintiff's classmates, demonstrate that Principal Garza and PSJA ISD fostered a climate of "coverup," not wanting to "rock the boat" and thereby risk additional consequences that would come from complete transparency. Garza had actual knowledge of a sexually inappropriate relationship between one of his staff and a minor child student since before February 14. Yet he chose to do absolutely nothing about it for well over two months, until at least late April, when other staff forced his hand.

48.     In a letter written to Plaintiff's mother dated May 7, 2019, PSJA ISD claims that it "was not aware of any allegations of inappropriate conduct by Mr. Cantu towards Yesenia until May 24, 2018." The letter continues: "During the 2017–18 school year, a campus security guard overheard Yesenia say that she was 'in love' with Mr. Cantu." However, in a sworn affidavit to police investigators dated June 11, 2018, Principal Garza says that he "had been informed about 1 month before [May 24] that Yesenia would say 'hi' to Mr. Cantu, however nothing more than a casual 'hi' in the halls." In this affidavit, *Principal*

*Garza is clearly misleading and concealing from police investigators, in a material way, what he already knows about the extent of the situation.* At the time he told police that the interaction between Plaintiff and Cantu was "nothing more than a casual 'hi' in the halls," he was already very well aware that Plaintiff actually said that she was "in love" with Cantu—and had even previously caught Cantu in the act of sexually assaulting Plaintiff. By Principal Garza's own admission, in early April a security guard that worked at the school was made aware that something was going on between Plaintiff and Cantu; and reported it to Principal Garza and the special education supervisor—Ms. Sonia Arevalo—according to the School District. According to PSJA ISD's own letter, this must have occurred on May 24. The security guard was told that it would be handled and not to say anything to anyone else about it.

49.     On or about May 23, 2018, Plaintiff's mother had asked a friend of hers to pick Plaintiff up from school to take her to a doctor's appointment. Upon arriving at the school, the school's front office secretary informed her that she could not locate Plaintiff. The front office secretary also informed the friend that Plaintiff had over 50 absences in the 2017-2018 school year. The friend immediately informed Plaintiff's mother of this, and Plaintiff's mother went to the school to find out why she had not been informed. Plaintiff's mother was told she would need to speak with someone else to address her concerns.

50.     The very next day, May 24, 2018, Plaintiff's mother became aware of something going on between Plaintiff and Cantu. One of Plaintiff's friends informed her that she and another friend had seen Cantu hug and carry Plaintiff in the hallways at school. Plaintiff's friend also informed Plaintiff's mother that Cantu would sometimes text and call

Plaintiff.

51.     Plaintiff's mother immediately drove to PSJA Memorial Early College High School and asked to speak to Principal Garza. Plaintiff's mother reported all the information she received from Plaintiff's friend to Principal Garza, specifically her concerns that a male teacher hugging and carrying Plaintiff at school is inappropriate behavior tantamount to sexual harassment. Principal Garza admitted to Plaintiff's mother that  he was already aware that a teacher was talking to Plaintiff in private—something else he neglected to tell police.

52.     Plaintiff's mother was infuriated, rightfully so, that Principal Garza had not informed her of this and she demanded that he investigate her complaints further. Principal Garza informed Plaintiff's mother that there was nothing else he could do about the matter except report her concerns to PSJA ISD's Central Office.

53.     Based upon information and belief, Principal Garza reported Plaintiff's mother's concerns to Ms. Gina Arredondo, secretary to Mr. Juan Alvarez, Title IX Coordinator and Chief of Staff for PSJA ISD, on or about May 25, 2018. According to Garza's affidavit to the San Juan Police Department, neither Ms. Arredondo nor Mr. Alvarez contacted him regarding the matter. Plaintiff's mother was also not contacted by any school official in response to her concerns and her request for an investigation. Further, no school official ever bothered to contact the police regarding this issue.

54.     The 2017–2018 school year ended on May 25, 2018. Plaintiff was scheduled to return to school on June 4, 2018 for summer school and state assessment retesting. From May 24, 2018 to June 4, 2018, Plaintiff's mother was not contacted by any school official in response to her concerns and her request for an investigation.

55.     On June 4, 2018, Plaintiff attended the first day of summer school. When Plaintiff's mother arrived at the end of the school day at around 11 a.m. to pick up Plaintiff, she was unable to locate her. In fact, Plaintiff had already been picked up from campus on that day by Cantu and taken to a nearby park.

56.     On the morning of June 5, 2018, Plaintiff's mother reported to police that Plaintiff was missing from her home in Alamo, Texas. Plaintiff was later found in San Juan, Texas, by officers of the San Juan Police Department. When the officers asked her where she had been, she led them to Cantu's residence.

57.     At that time, the San Juan Police Department opened an investigation into Cantu's behavior with Plaintiff. This investigation concluded that Cantu had sexually assaulted Plaintiff.

58.     According to the record, on or about June 5, 2018, Principal Garza claims to have learned from the Alamo Police Department that Cantu sexually assaulted Plaintiff. Based on information and belief, that same day Garza again reported this information to Alvarez, Title IX Coordinator and Chief of Staff for PSJA ISD. According to a statement released by PSJA ISD officials, Cantu was terminated on June 6, 2018.

59.     Plaintiff's mother went to the school during Plaintiff's second week of summer school to inform Garza that Cantu had sexually assaulted Plaintiff. Garza told her that he was already aware of this. Plaintiff's mother again expressed her frustration to Garza about the school failing to notify her of Plaintiff's absences and failing to inform her of the rumors.

60.     Cantu was subsequently charged with the Texas state crimes of sexual assault of a child and improper relationship between educator and student in the 430th District Court

18

of Hidalgo County, Texas. Cantu subsequently pled guilty to both charges. He was then imprisoned within the Texas Department of Criminal Justice.

61.     During the last week of June 2018, Plaintiff's mother went to the PSJA ISD central administration office to make a complaint regarding the school's failure to notify her of Plaintiff's approximately 100 absences or the rumors of misconduct by Cantu and to request an investigation of the sexual harassment of Plaintiff by Cantu at PSJA Memorial Early College High School. Plaintiff's mother spoke to Veronica Diaz at Human Resources Services at PSJA ISD. Plaintiff's mother was told that the District would speak to Garza and would be in touch with her. That same day, Plaintiff's mother received a message from an unknown woman from the District letting her know that the District would follow up with her. Plaintiff's mother was never contacted again by PSJA ISD central administration regarding her concerns and requests for investigation.

62.     Cantu would ask Plaintiff to meet him behind the cafeteria and she would skip class and meet him. Plaintiff reported that Cantu would hold her hand and told her he wanted to be her boyfriend and that their relationship would be their secret and no one else should know. Plaintiff also reported that Cantu had picked her up from her family's house in the middle of the night at least four times.

63.     As a result of the sexual harassment and assaults, and the school's failure to effectively address the same, Plaintiff has suffered and continues to suffer severe emotional distress and trauma, including feelings of depression, anxiety, and suicidal ideation. Further, she had approximately 100 absences during the time in question. In late June or early July 2018, Plaintiff was hospitalized for four days at the South Texas

Behavioral Center in Edinburg, Texas, after reporting that she wanted to commit suicide because of everything that had happened to her.

64.     Cantu should not have been permitted to continue working with children after multiple accusations and observations of sexually inappropriate conduct amounting to sexual harassment or assault were brought to the School District's attention.

65.     Further, Principal Garza failed to inform the Title IX Coordinator and/or the Superintendent of the overtly perverse behavior of Cantu, including and especially the fact that Garza walked into a well-lighted classroom wherein he observed Cantu sexually molesting Plaintiff.

66.     Nothing was done about Cantu's behavior, and the sexual assaults continued.

67.     Moreover, and most importantly, PSJA ISD had also developed policies and procedures to protect students like Plaintiff from sexual harassment. Those policies gave both Plaintiff and her parents a number of procedural and substantive rights. PSJA ISD failed to provide them.

68.     They include, but are not limited to, the right to receive notice of procedural rights because of the parents' status as people related to those who were sexually assaulted. PSJA ISD failed to provide them.

69.     Plaintiff never received notice of the identity of the Title IX Coordinator for the District in regard to investigating allegations of the sexual harassment. PSJA ISD never informed Plaintiff of its procedures and Title IX Formal Complaint process, which included how to report or file a complaint of sex discrimination, how to report or file a Formal Complaint of sexual harassment, and how the District would respond.

70.     PSJA ISD did not follow its own policies and procedures, which required allegations of sexual harassment to be investigated.

71.     PSJA ISD never provided a psychological assessment to Plaintiff.

72.     PSJA ISD never provided school-based counseling services to Plaintiff.

73.     PSJA ISD never provided a class or program on social skills as to how to deal with children who have experienced and were subject to sexual harassment.

74.     PSJA ISD failed to do anything to prevent the sexual harassment and assault Plaintiff experienced.

75.     PSJA ISD failed to do anything to remedy the effects of the sexual harassment and assault Plaintiff experienced.

## VIII.  STATE ACTION

76.     Defendants, in both official and individual capacities, and in all matters, were acting under color of state law when they subjected Plaintiff to the wrongs and injuries set forth herein.

## IX .  UNCONSTITUTIONAL POLICIES, PROCEDURES , PRACTICES, AND CUSTOMS, AND VIOLATION OF THE  DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT TO THE U.S. CONSTITUTION

77.     The failure of the School District to have policies, procedures, practices, and customs in place to protect Plaintiff from its employee violated Plaintiff's rights pursuant to the Fourteenth Amendment of the U.S. Constitution, for which Plaintiff seeks recovery pursuant to 42 U.S.C. § 1983.

78.     The School District failed to sufficiently train its staff in addressing the needs of Plaintiff, who was a target of harassment, assault, and sexual assault, thereby violating Plaintiff's rights pursuant to the Fourteenth Amendment, for which she seeks recovery pursuant to 42 U.S.C. § 1983.

79.     The School District failed to sufficiently  supervise staff in addressing the needs  of Plaintiff, who was the target of harassment, assault, and sexual assault, thereby violating her rights pursuant to the Fourteenth Amendment, for which she seeks recovery pursuant to 42 U.S.C. § 1983.

80.     During the relevant time period contemplated by  this cause of action, Defendants by and through their various professional staff members, including but not limited to Principal Garza, did not follow federal and state law, federal and state regulations, and federal and state executive agency directives in regard to the treatment of students, and such failures were a moving force in the causing injuries to Plaintiff.

81.     During the relevant time period contemplated by  this cause of action, Defendants, by and through their officials and employees, had a policy, practice, and custom of conscious and deliberate indifference to federal law, federal and state administrative directives, and School Board policies and procedures in regard to the treatment of students such as Plaintiff,  and such failures were a moving force in causing the Plaintiff's injuries.

82.     Based upon the operative facts, such acts and omissions by Defendants rise to the level of deliberate indifference and conscious indifference, constituting a violation of Plaintiff's rights under the Fourteenth Amendment, for which Plaintiff seeks recovery pursuant to 42 U.S.C. § 1983.

## X. VIOLATIONS OF THE U.S. CONSTITUTION BY GARZA

83.     The acts and omissions of Garza violated the rights of Plaintiff, pursuant to the Fourteenth Amendment of the U.S. Constitution, for which Plaintiff seeks recovery pursuant to 42 U.S.C. § 1983, as such acts and omissions caused a deprivation of Plaintiff's liberty interest in her bodily integrity, as protected by the Due Process Clause of the Fourteenth Amendment.

84.     The acts and omissions of Defendant Garza violated Plaintiff's right to equal protection pursuant to the Fourteenth Amendment of the U.S. Constitution, for which Plaintiffs seek recovery pursuant to 42 U.S.C. § 1983, for denial of Plaintiff's right to equal access to a public education.

## XI.  CLAIMS FOR RELIEF PURSUANT TO TITLE IX

85.     The Supreme Court of the United States has interpreted Title IX to provide a plaintiff with a private right of action to bring forth claims pursuant to Title IX in a court of law.

86.     Title 20 U.S.C. § 1681(a) provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."

87.     "Sexual harassment of a student by a school employee is a form of sex discrimination prohibited by Title IX." Office of Civil Rights, *Revised Sexual Harassment*

*Guidance: Harassment of Students by School Employees, Other Students and Third Parties*, 66 Fed. Reg. 551201, at 2 (Jan. 19, 2001).

88.     In *Gebser*, the Supreme Court established a multi-part analysis for establishing a sexual harassment claim under Title IX against a federal funding recipient in the context of teacher-on-student sexual harassment where the recipient or appropriate person had actual notice of the sexual harassment, and the recipient or appropriate person responded with deliberate indifference.  Those elements are present in this case.

89.     Defendant PSJA ISD receives federal financial assistance.

90.     Principal Garza is an "appropriate person" as required under the *Gebser* analysis because he was an official of PSJA Memorial Early College High School that had the authority to take corrective action to end the sexual harassment and assaults (discrimination based on sex) that Plaintiff suffered and to institute corrective measures on Plaintiff's behalf,  i.e., he had the authority and capacity to, inter alia, report and fire Cantu, which would have effectively ended the harassment and abuse of Plaintiff. Further, in *Poloceno v. Dallas Independent School District*, 826 F. App'x 359, 356 (5th Cir. 2020) (unpublished opinion), the Fifth Circuit held that "a school principal was an 'appropriate person' with 'authority to take [the] corrective action.'"

91.     Principal Garza had actual knowledge of Cantu's abusive and predatory proclivities and actual knowledge of his tendency to prey upon the frailties of students like Plaintiff, and he knew the risks posed to female students like Plaintiff. Most significantly, when Garza walked in on Cantu and Plaintiff in a sexually compromising position wherein Garza, before turning a blind eye, made eye contact with them and continued to go about

his day without reporting Cantu or making him stop, he left Plaintiff with a child molester such that Cantu could continue with his predatory actions upon Plaintiff. Secondarily, a PSJA Memorial Early College High School security guard reported such sexual harassment to Garza and  Garza again failed to take action; therefore, Garza had both actual knowledge of sexual harassment being inflicted on Plaintiff and knowledge of allegations of the same issue.

92.        Defendant PSJA ISD was deliberately indifferent to the emotional and physical abuse and harassment of Plaintiff of which they had actual knowledge. Defendant PSJA ISD's actions were deliberately indifferent in that they were clearly unreasonable in light of the known circumstances. The unreasonableness of Defendants' actions include, but are not limited to, Garza's actual knowledge of Cantu and Plaintiff's inappropriate relationship and all the perverse permutations of said relationship brought on by Cantu, combined with Garza's complete and utter unwillingness and failure to do anything about the ongoing harassment. Further,  when Principal Garza walked in on Cantu and Plaintiff in a sexually compromising position  in one of the classrooms of PSJA Memorial Early College High School, where Cantu had his  pants down and Yesenia had her legs wrapped around him, Garza took no remedial action  to discipline and/or remove Cantu or to provide safety for Plaintiff. Additionally, Principal Garza, with actual knowledge of the sexual harassment/abuse of Plaintiff, did not take action  for three months. It was only when Plaintiff's mother became aware of the sexual abuse that her 16-year-old daughter had suffered and demanded that Garza  take action that Principal Garza, at the bare minimum, reported the abuse to the secretary of  the Title IX Coordinator—months after seeing them

together.  To add insult to injury, the Title IX Coordinator failed to respond to Garza, and Garza failed to follow up with the Title IX Coordinator. From the facts alleged herein, it is apparent that the sexual harassment and abuse that Plaintiff endured was not a priority of the School District Defendants.

93.   Plaintiff suffered disparate, discriminatory, and abusive treatment at the hands of the School District Defendants because of her female gender.

94.   In addition, Defendants discriminated against Plaintiff on the basis of sex, in violation of Title IX in the following manner including, but not limited to:

a.   Failing to address the sexual harassment and abuse of Plaintiff by PSJA ISD former employee Cantu of which it had actual knowledge before May 24, 2018 (since atleast Valentine's Day);

b.   Failing to promptly and effectively investigate the sexual harassment and abuse when Plaintiff's mother reported the harassment and requested an investigation from Defendant PSJA ISD on May 24, 2018 and again in late June 2018;

c.   Failing to take action to prevent the sexual harassment and abuse from recurring *for atleast 10 weeks*, specifically, but not exclusively, between February 14, 2018 and June 5, 2018;

d.   Failing to take interim measures to protect Plaintiff against the sexual harassment and abuse and to avoid depriving Plaintiff of her educational opportunities and the services, benefits, programs, and activities at PSJA Memorial Early College Highschool, including approximately 100 absences this semester and suicidal

thoughts;

e.      Failing to inform Plaintiff of any investigation it conducted; and

f.      Failing to take corrective or remedial action to remedy the harsh physical and

psychological effects of the sexual harassment and abuse on Plaintiff.

95.     As a direct and proximate result of Defendants' deliberate indifference and

reckless disregard for Plaintiff's rights under Title IX, Plaintiff suffered both severe mental

anguish and bodily  injury, and among other injuries, Plaintiff was hospitalized due to

suicidal  ideations resulting from Defendants' deliberate indifference to her rights under

Title IX and  reckless disregard of her right to bodily  integrity. Plaintiff had approximately

100 absences  during  this  semester  and  suicidal  thoughts.  Plaintiff continues  to  suffer

mental anguish.


## XII.  THE REHABILITATION ACT AND TITLE II
## OF THE AMERICANS WITH DISABILITIES ACT

96.     Under § 504, an "individual with a disability" includes an individual with a

"physical or mental impairment that substantially limits one or more major life activities of

such individual." 29 U.S.C. § 705(20)(B); 42 U.S.C. § 12102(1)(a). Section 504 prohibits

discrimination against individuals on the basis of their disability by any program, such as

programs operated by the School District, receiving federal financial assistance.

97.     Pursuant to Title II of the Americans with Disabilities Act, an individual with

a disability is a person who, "with or without reasonable modifications to rules, policies, or

practices. . . or the provision of auxiliary aids and services, meets the essential eligibility

requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2).

98.     Title II prohibits discrimination against individuals on the basis of their disability by all public entities. 42 U.S.C. § 12132.

99.     Pursuant to § 504, no otherwise qualified individual with a disability shall, solely by reason of his or her disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance. 29 U.S.C. § 794(a).

100.     Pursuant to Title II, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public school district, or be subjected to discrimination by the district. 42 U.S.C. § 12132; 28 C.F.R. § 35.130.

101.     Pursuant to *Melton v. Dallas Area Rapid Transit*, 391 F.3d 669 (5th Cir. 2004), a prima facie case of discrimination under § 504 requires "(1) the existence of a program or activity within the state which receives federal financial assistance; (2) the plaintiff is an intended beneficiary of the federal assistance; and (3) the plaintiff is a qualified handicapped [disabled] person who solely by the reason of her handicap has been excluded from participation in, been denied benefits from, or otherwise has been subject to discrimination under such program or activity." *Id.* at 676 n.8.

102.     "The Rehabilitation Act and Americans with Disabilities Act are judged under the same legal standards, and the same remedies are available under both acts." *Kemp v. Holder*, 610 F.3d 231, 234 (5th Cir. 2010).

29

103.    PSJA ISD Memorial Early College High School receives millions of dollars in federal financial assistance. Further, PSJA ISD Memorial Early College High School maintains a Special Education Program that also receives federal financial assistance as part of the general receipt of federal financial assistance by PSJA ISD.

104.    Plaintiff was born with chromosomal 9 and 10 abnormalities, which resulted in developmental delays early in life. As recent as November 6, 2018, Plaintiff was diagnosed with Language Disorder, Oppositional Defiant Disorder, Intermittent Explosive Disorder, and Borderline Intellectual Functioning.

105.    Plaintiff's intelligence quotient is 72, placing her average overall ability only 3% as good as or better than her same age peers.

106.    Plaintiff meets the requisite eligibility requirements for special education services at Defendant PSJA ISD under the Individuals with Disabilities Education Act ("IDEA") under the category of Other Health Impairment for Attention Deficit Hyperactivity Disorder as of April 4, 2017.

107.    Prior to April 4, 2017, Plaintiff was eligible for special education services under the IDEA under the category of Specific Learning Disability and Speech Impairment. Plaintiff, who was enrolled in the PSJA ISD Memorial Early College High School Special Education Program as a result of her above-mentioned disabilities, was an intended beneficiary of the federal assistance.

108.    Cantu was a former special education teacher's aide at PSJA Memorial Early College High School.

109.    Cantu's paraprofessional position allowed him to work with students who had

30

qualifying disabilities, including Plaintiff. Rather than providing educational assistance to his students, Cantu took a perverse advantage over Plaintiff's disability by engaging in manipulative tactics in order to achieve his goal of sexual harassment and abuse of the Plaintiff. All the while, Cantu played to Plaintiff's disability by manipulating and coercing her into believing that such harassment was without ethical, moral, or legal consequence. Cantu's manipulation of Plaintiff based on her disability and his subsequent removal of Plaintiff from her classes/school grounds to engage in the sexual harassment behavior resulted in Plaintiff's being excluded from participation in, and denied the benefits of, her educational pursuits at PJSA Memorial Early College High School.

110.   The School District Defendants engaged in discrimination against Plaintiff based on her disabilities by having actual knowledge of the sexual harassment and abuse of Plaintiff yet failing to take any measures to cease the sexual harassment and abuse and/or prevent it. This resulted in the continuous harassment and abuse, and the continuous exclusion of Plaintiff from participation in, and denial of the benefits, services, programs, and activities of PSJA Memorial Early College High School.

### XIII.  INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

111.   Principal Garza, after witnessing Plaintiff being harassed and molested by Cantu and then being informed months later by a PSJA ISD Memorial Early College High School security guard of the sexual harassment and abuse of Plaintiff, intentionally turned a blind eye to this abuse and failed to report the abuse. Garza told the security guard to not say anything about the sexual abuse to anyone.

31

112.     Garza's willful and deliberate inaction after seeing Cantu molest Plaintiff allowed for the continued sexual molestation of Plaintiff for  an additional five months. Even after Plaintiff's mother reported the abuse to Garza, he failed  to follow  up with the Title IX Coordinator, who was also complicit in the inaction, which  would have rescued Plaintiff from the abuse. Garza was aware that as a result of Plaintiff's disability, she was particularly susceptible to such emotional distress, especially given that Cantu was a teacher's aide in Plaintiff's program. Garza, as Plaintiff's principal, was in a position to save and rescue Plaintiff from the molestation inflicted by Cantu, *as he witnessed it firsthand*, yet he chose not to say or do *anything* for atleast 10 weeks, when his hand was forced, thus allowing the sexual abuse to continue. Garza lacked the most basic humanitarian compassion for another human being, making his conduct extreme and outrageous.

113.       As a direct and proximate result of Garza's allowing Plaintiff to be sexually harassed and abused on a continual basis, both on and off school grounds, Plaintiff suffered severe emotional distress including, but not limited to, past, present, and continuing emotional distress, trauma, depression, anxiety, and suicidal ideation. Further, Plaintiff suffered grief, shame, embarrassment, and humiliation. Plaintiff had to endure all of these feelings  and traumas for over five months because of the School District Defendants' failure to act. Consequently, Plaintiff had many absences. Further, in June and/or July 2018, Plaintiff was hospitalized for four days at the South Texas Behavioral Center in Edinburg, Texas, after reporting that she wanted to commit suicide as a result of everything that happened to her.

## XIV.  RATIFICATION

114.    The Pharr-San Juan-Alamo ISD ratified the acts, omissions, and customs of School District personnel and staff, including Garza.

115.    As a result, the Pharr-San Juan-Alamo ISD is responsible and liable for the acts and omissions of its staff persons, including Principal Garza, who were responsible for the safety of Plaintiff.

## XV.  PROXIMATE CAUSE

116.    Each and every of the foregoing acts and omissions on the part of the School District and Garza, taken separately and/or collectively, constitute a direct and proximate cause of the injuries and damages suffered by Plaintiff, as alleged here.

## XVI.  DAMAGES

117.    As a direct and proximate result of Defendants' conduct, they are jointly and severally liable to Plaintiff, who has suffered injuries and damages, for which she is entitled to recover herein, including but not limited to

    a.    Loss of educational opportunities;

    b.    Physical pain in the past;

    c.    Physical pain in the future;

    d.    Medical expenses in the past;

    e.    Medical expenses in the future;

f.    Mental anguish in the past;

g.    Mental anguish in the future;

h.    Mental health expenses in the past and in the future;

i.    Physical impairment in the past; and

j.    Various out-of-pocket expenses incurred by her family but for the acts and

omissions of the School District.

118.    Plaintiff is also entitled to attorney's fees and costs of the case, as permitted by law, pursuant to Title IX, 42 U.S.C. §§ 1983 and 1988, the Rehabilitation Act, and the Americans with Disabilities Act.

119.    In addition, Defendants, jointly  and  severally,  are  liable  to  Plaintiff  for punitive  damages, as in violating Plaintiff's federally protected rights they  acted with willful disregard  for and reckless indifference to those rights.

## XVII.  PLAINTIFFS REQUEST TRIAL BY JURY

Plaintiff respectfully requests a Trial by Jury.

## XVIII.  PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays in the manner and particulars noted above, for a judgment against Defendants, jointly and severally, in an amount sufficient to fully compensate her for the elements of damages enumerated above, and that she recover from Defendants her attorney's fees and costs incurred in bringing this action, as allowed by law, together with prejudgment and postjudgment interest, and for such

other relief as this Court  deems just and proper.

Respectfully submitted,

s/ Stephen Gregory Rushing
914 N. Main St. #2
McAllen, TX 78501
Office: 956-666-7874
Email:
service@therushinglawfirm.net
greg@therushinglawfirm.net
Paralegal:
corina@therushinglawfirm.net

ATTORNEY FOR PLAINTIFF